SHAWNA PARKS (CA BAR NO. 208301)
sparks@dralegal.org
MEREDITH J. WEAVER (CA BAR NO. 299328)
mweaver@dralegal.org
SEAN BETOULIERE (CA BAR NO. 308645)
sbetouliere@dralegal.org
Disability Rights Advocates
2001 Center Street, Third Floor
Berkeley, California 94704-1204
Tel:    (510) 665-8644
Fax:    (510) 665-8511

ELIANA FISHER (pro hac vice)
efisher@dralegal.org
Disability Rights Advocates
655 Third Avenue, Suite 2619
New York, NY 10017-5621
Tel: (212) 644-8644
Fax: (212) 644-8636

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CARINA HO and CHRISTINA MILLS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>      v.<br><br>THE HERTZ CORPORATION; HERTZ GLOBAL HOLDINGS, INC.; and RENTAL CAR INTERMEDIATE HOLDINGS, LLC,<br><br>        Defendants. | Case No. 3:24-cv-01066-MMC<br><br>**DECLARATION OF MEREDITH J. WEAVER IN SUPPORT OF PLAINTIFFS' MOTION FOR REASONABLE ATTORNEYS' FEES AND COSTS**<br><br>Judge:   Honorable Maxine M. Chesney<br>Date:    August 21, 2026<br>Time:   9:00 a.m.<br>Crtrm.:  7 |

I, Meredith J. Weaver, declare as follows:

1.    I am a Senior Counsel at Disability Rights Advocates ("DRA"), admitted to practice law in California, a member of the bar of this Court, and counsel of record for Plaintiffs in this matter.  I submit this declaration in support of Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs.  I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently testify to them.

**PROCEDURAL AND NEGOTIATION HISTORY**

2.    In January 2024, Plaintiffs sent a letter to Hertz in an attempt to resolve their claims without litigation.  The parties engaged in pre-litigation discussions, but no resolution could be reached.  Accordingly, Plaintiffs filed their class action complaint in this action.

3.    Prior to the parties' 26(f) conference, Plaintiffs proposed various means of conserving resources, reducing costs, and expediting this case to reach an early resolution of the core disputed issue in this case—whether Hertz is required to disable knee bolster airbags ("KBAs") where necessary to install hand controls—including through stipulating as to class certification and streamlined early motion practice based on a set of stipulated facts and limited discovery focused on contested issues. Defendants rejected all suggested methods of narrowing issues and otherwise streamlining this matter, and proposed none in response.

4.    As a result, Plaintiffs were required to engage in thorough and contentious fact and expert discovery practice for well over a year.

5.    During discovery, Plaintiffs propounded and responded to requests for production, requests for admission, and interrogatories, and addressed various discovery related disputes with Defendants.  Plaintiffs also reviewed thousands of documents produced by Hertz, including policies, internal correspondence, rental data, and customer correspondence.

6.    In addition to extensive document review, Plaintiffs deposed two individuals designated to testify on Hertz's behalf pursuant to Federal Rule of Civil Procedure 30(b)(6) as well as a third-party individual employed by Hertz's hand control vendor.  Hertz also deposed each of the named plaintiffs.

7.    DRA conducted outreach to hand control users by posting in United Spinal Association's online newsletter.  Dozens of hand controls users who have rented or tried to rent vehicles from Hertz responded to this outreach and contacted DRA to share information about their experiences and needs.

8.    Plaintiffs also prepared a motion for class certification including ten declarations from non-party hand control users.  At the time the parties' request to stay litigation was granted, Plaintiffs had already defended the depositions of four of those declarants and were in the process of preparing the remaining six individuals for depositions noticed by Hertz.  Plaintiffs' motion for class certification would have been due two weeks after the court stayed litigation.

9.    Plaintiffs retained experts to prepare reports on: (1) the feasibility of and any safety risks associated with disabling and re-enabling KBAs in order to install left-side hand controls; (2) the general process of driver rehabilitation for people with disabilities, including why people use particular types of hand controls; (3) disparities in pricing of the cheapest vehicle(s) with hand controls as compared to the cheapest vehicle without hand controls at Hertz airport rental locations; and (4) the lack of any statistically significant benefits from KBAs and the potential of KBAs to increase the likelihood of certain injuries.  Defendants' experts prepared a report on the effectiveness of KBAs and safety concerns resulting from their disconnection, and a literature review on studies regarding the efficacy of KBAs.

10.    When litigation was stayed in this action, Class Counsel was in the process of working with their experts to prepare rebuttal reports to the two experts disclosed by Hertz.

11.    After completing fact discovery and exchanging expert reports, the parties participated in three settlement conference sessions before Magistrate Judge Joseph C. Spero.  During these conferences, the parties worked through more difficult settlement terms.  Between settlement conferences, the parties exchanged several drafts of a written agreement and negotiated language to implement agreements reached during settlement conferences and other necessary provisions.

12.    Plaintiffs expended significant time preparing for and engaging in these adversarial negotiations with Defendants.  Through these efforts, Plaintiffs ultimately obtained an excellent settlement that requires Hertz to make nationwide changes to its policies and practices that will expand access to Hertz's rental vehicles for all potential Hertz Customers with disabilities who need Hand Controls to drive a rental vehicle.

13. The crucial information obtained during full fact and expert discovery enabled the parties to reach a resolution during the final settlement conference on February 17, 2026, which has now been memorialized and executed.

## DISABILITY RIGHTS ADVOCATES

14. DRA is a 501(c)(3) nonprofit public interest organization exclusively dedicated to advancing the civil rights of persons with disabilities. DRA focuses on class action impact litigation on behalf of clients who face discrimination or other violations of civil rights.

15. DRA is one of the leading public interest firms in the country in disability rights legal advocacy. Since its founding in 1993, DRA has served as lead counsel in hundreds of disability civil rights class actions across the country and has specialized expertise in class actions involving the ADA, the Rehabilitation Act, and state and local disability rights laws. DRA has been appointed as class counsel in hundreds of civil rights cases, and its systemic reform litigation in areas such as public transportation, voting access, and emergency preparedness has benefited countless persons with disabilities and set national precedents.

16. DRA's clients do not pay for our services. DRA does not receive any government funding for our litigation. Generally, DRA handles cases in which the client(s) cannot afford to retain a law firm or where other lawyers will not handle the matter. DRA's existence is largely dependent upon court-awarded fees in the cases in which our litigation is successful.

17. Representative recent cases that DRA has handled are:

a. *Lane v. City of Chicago*, No. 25-cv-10880 (N.D. Ill.), a putative class action on behalf of people with mobility disabilities challenging the City of Chicago's widespread and ongoing failure to make its public pedestrian rights of way accessible.

b. *Garrett v. WHC Worldwide, LLC*, No. 25-cv-03904-YGR (N.D. Cal.), a pending lawsuit in which the parties' proposed class settlement agreement to ensure access to SuperShuttle's transportation services for those who require a wheelchair accessible vehicle ("WAV") has been preliminarily approved and a final fairness hearing was held on May 26, 2026.

c. *Curran v. City of Oakland*, No. 23-CV-02354-RS (N.D. Cal.), a class action lawsuit to address the City of Oakland's failure to make its newly constructed or altered pedestrian

facilities fully and equally accessible to people with mobility disabilities and failure to maintain the accessibility of its newly constructed or altered pedestrian facilities; resulted in a class settlement requiring, in part, annual remediation quotas until the City achieves a pedestrian right of way that fully complies with federal and state disability access standards.

        d.     *Cal. Council of the Blind v. Weber*, No. 3:24-cv-01447-SK (N.D. Cal.), a class action lawsuit to ensure that California's vote-by-mail program is fully accessible for Californians with print disabilities for all future elections.

        e.     *Prado v. City of Berkeley*, No. 23-cv-04537-EMC (N.D. Cal.), a putative class action lawsuit regarding the City of Berkeley's failures to provide accommodations for houseless people with disabilities, provide mental health services to such persons, and include staff trained in accommodating the needs of people with disabilities in its outreach teams.

        f.     *Nat'l Ass'n of the Deaf v. SiriusXM Holdings, Inc.*, No. 1:21-cv-10542-JAV (S.D.N.Y.), a pending lawsuit seeking to ensure that SiriusXM, Stitcher, and Pandora provide accessible versions of podcasts for individuals who are deaf or hard of hearing.

        g.     *Trivette v. Tenn. Dep't of Corr.*, No. 3:20-cv-00276 (M.D. Tenn.), a lawsuit challenging the Tennessee Department of Correction's system-wide failure to provide accommodations such as videophones, qualified sign language interpreters, and visual notifications to deaf persons incarcerated in state prisons; resulted in a settlement requiring statewide injunctive relief.

        h.     *Fust v. First Urology, P.S.C.*, No. 3:20-cv-562-CHB (W.D. Ky.), a lawsuit regarding discrimination against patients who require assistance in transferring from a wheelchair to medical equipment or an examination table resulting in a settlement including a remedial plan to ensure adequate accessible medical equipment.

        i.     *Am. Council of the Blind of Metropolitan Chicago v. City of Chicago*, No. 1:19-cv-06322 (N.D. Ill.), a class action on behalf of blind and low-vision pedestrians.  Summary judgment was decided in favor of plaintiffs (667 F.Supp.3d 767 (N.D. Ill. 2023)) and an extensive remedial order was issued that requires the City to install thousands of accessible pedestrian signals (2025 WL 4694007 (N.D. Ill. May 29, 2025)).

18.     DRA has received national recognition and awards for the quality and skill demonstrated in its representation of persons with disabilities.  Some awards DRA has received include the ABA Paul Hearne Award for Disability Rights, the Alan T. Brown Foundation's Standing Tall Award, and the International Dyslexia Association's Samuel T. Orton Award.

19.     Because of its reputation and area of specialty, DRA is able to attract personnel of unusually high caliber.  The credentials of the attorneys who have staffed this case for DRA are as follows:

### Shawna Parks

20.     Shawna Parks is the Chief Litigation Officer at DRA and has held this role since February 2024.  She is responsible for overseeing the organization's nationwide docket of impact litigation and supervising lawyers in DRA's Berkeley, Chicago, and New York offices.  On this case, Ms. Parks provided high-level strategic oversight and participated in the parties second and third settlement conferences.

21.     Ms. Parks has extensive expertise in the substantive areas of disability rights, civil rights, and education (including special education).  She has litigated numerous cases in these fields, including both class actions and individual cases.  She has particular experience litigating complex cases against public entities, most often with the goal of system reform.

22.     Ms. Parks is a 1999 graduate of U.C. Berkeley School of Law, and a 1995 graduate of U.C. Berkeley.  From 1999–2000, Ms. Parks was a Fulbright Scholar in Budapest, Hungary, where she researched a recently enacted nondiscrimination statute, worked on developing test litigation, and co-organized a conference of Eastern European disability rights advocates.

23.     In 2000, Ms. Parks was awarded a multi-year Equal Justice Works fellowship to work on systemic disability rights advocacy at Disability Rights Advocates.  From 2003 through 2004, she was an associate at Schonbrun DeSimone Seplow Harris & Hoffman, where she worked primarily on race and gender discrimination employment cases.  From 2005 through early 2012, Ms. Parks practiced at the Disability Rights Legal Center ("DRLC"), in Los Angeles, California, where she was Legal Director from 2009 through her departure.  From 2007 through 2012 she was also an Adjunct Professor at Loyola Law School in Los Angeles, where she supervised DRLC's litigation clinical program and co-taught

Loyola's Disability Rights and Special Education Law class.  From early 2012 through 2013 Ms. Parks returned to DRA as the Director of Litigation.

24.    From 2014 through January of 2024, Ms. Parks was the principal attorney at the Law Office of Shawna L. Parks.  Her firm litigated civil rights, disability rights, and education cases.  In private practice she litigated individual cases that affected broader reform or that raised questions of first impression as well as engaged in class action litigation.  She also worked extensively with low-income clients and communities, and regularly co-counseled with the legal nonprofit community, including DRA.

25.    Ms. Parks regularly speaks and teaches on topics related to education, civil rights, and disability rights.  For example, she is a recurring speaker on special education and disability discrimination topics at the Practicing Law Institute's "California Special Education Law."  Ms. Parks presented at this conference in 2020, 2022, and 2023.  She also spoke as part of a panel on class action trial plans at the Impact Fund's Class Action Conference in 2023.  She guest lectures at local law schools, including, most recently, Loyola Law School's Juvenile Justice Clinic seminar.

26.    Ms. Parks has received numerous awards for her work.  She is currently listed as a "Super Lawyer" in the field of civil rights.  In 2018, she received an outstanding pro bono service award from DRLC for her continued work with the disability community.  Ms. Parks has twice been part of team nominees for Public Justice's Trial Attorney of the Year, including for her work on a class action addressing education in the San Bernardino Juvenile Halls, and most recently in 2017 for her work on a class action addressing physical inaccessibility for people with disabilities on Los Angeles' public rights of way.  In 2016, Ms. Parks received the "Breaking Education Barriers Award," from the Learning Rights Law Center, for her cutting-edge work on education cases.  She has twice been named a California Lawyer magazine attorney of the year, once in the field of juvenile law, and once in the field of disability rights.  Ms. Parks has also twice been named one of the Top 100 Women Litigators in California by the Daily Journal.

27.    During her career, Ms. Parks has been class counsel on numerous disability rights and special education cases.  For example, she was lead trial counsel in *Brooklyn Center for Independence of the Disabled, et al. v. Bloomberg*, which was the first case of its kind to go to trial and addressed the

failure of New York City to address the needs of its more than 900,000 people with disabilities in its large-scale disaster plans.  The court found against the City.  980 F. Supp. 2d 588 (S.D.N.Y. 2013).  The Yale Law Journal published an article on this case: Adrien A. Weibgen, *The Right to Be Rescued: Disability Justice in the Age of Disaster*, 124 Yale L.J. 2406 (2015).

28.    Ms. Parks is currently litigating *J.R. v. Oxnard School District*, Case No. 2:17-cv-04304-JAKFFM (C.D. Cal.), a federal class action addressing the systemic failure of the District to identify and evaluate students in need of special education services.  Learning Rights Law Center and Vanaman German LLP are her co-counsel on that matter.

29.    Ms. Parks is also currently supervising multiple impact cases in state and federal court including, but not limited to, *California Council of the Blind v. Weber*, Case No. 3:24-cv-01447-SK (N.D. Cal) (access to vote by mail system for people with print disabilities); *Battle v. State of Tennessee*, Case No. 3:22-cv-00022 (M.D. Tenn.) (effective communication for deaf individuals seeking state services for mental health and intellectual and developmental disabilities); and *Taxis for All Campaign v. New York City Taxi and Limousine Commission*, Case No. 1:11-cv-00237-GBD (S.D.N.Y) (accessibility of yellow cabs in New York).

30.    Ms. Parks has been lead or co-lead class counsel on numerous other class actions addressing disability rights and/or education, including: *Casey A. v. Gundry*, Case No. CV 10-00192 GHK (FMOx) (C.D. Cal.) (successfully settled class action addressing failure to provide education and special education to thousands of youth detained in Los Angeles County's largest juvenile detention camp); *CALIF, et al., v. City of Los Angeles, et al.*, 2011 WL 4595993 (C.D. Cal. 2011), Case No. 2:09-cv-00287-CBM-RZ (class action regarding failure to address the needs of people with disabilities in emergency plans of the City and County of Los Angeles; summary judgment granted in favor of plaintiffs against City, successful settlement with County); *Goldkorn v. County of San Bernardino*, Case No. 5:06-cv-00707-VAP (C.D. Cal.) (successfully settled class action addressing failure to provide physical and programmatic access to all courthouses in the San Bernardino court system); *Sengupta v. City of Monrovia, et al.*, Case No. CV 09-0795 ABC (JWJx) (C.D. Cal.) (successfully settled class action addressing police department's failure to provide effective communication for people who are deaf and hard of hearing in field and jail settings); *Lauderdale v. Long Beach Police Department*, Case

No. CV 08-979 ABC (JWJx) (C.D. Cal.) (successfully settled class action addressing failure to provide effective communication for people who are deaf and hard of hearing in field and jail settings); *Jackson, et al. v. Cal. State Univ. San Bernardino, et al.*, Case No. EDCV 05-1110 VAP (SGLx) (C.D. Cal.) (successfully settled class action on behalf of students with disabilities regarding systemic failure to provide accommodations and physical access on campus); *Valenzuela v. County of Los Angeles*, Case No. CV 02-9092 ABC (JWJx) (C.D. Cal.) (successfully settled class action addressing sheriff's department's failure to provide effective communication for people who are deaf and hard of hearing in field and jail settings); *Munoz, et al. v. Sacramento Council of Governments, et al.*, Case No. C-05-01525 JSW (N.D. Cal.) (successfully settled class action addressing freeway call box communication access for people who are deaf).

31.     Ms. Parks has also been involved at various stages in additional class actions, including *Garcia v. Los Angeles Unified School District*, Case No. 09-8943 VBF (CTx) (C.D. Cal.) (class action addressing special education services for 18–22 year old men in jail, involved at litigation and appellate stages); *Doe v. County of San Bernardino*, Case No. CV-02-962-SGL (C.D. Cal.) (class action addressing provision of education to youth detained in juvenile halls, involved at settlement and monitoring stages); *Johnson v. County of Los Angeles*, Case No. CV 08-03515 DDP (SHx) (C.D. Cal.) (class action addressing conditions, accommodations and accessibility for inmates with physical disabilities in jail, involved in litigation and settlement); *Willits v. City of Los Angeles*, Case No. CV 10-05782 CBM (RZx) (C.D. Cal.) (class action addressing physical access for people with mobility disabilities along public rights of way, settlement relief estimated to be over $1 billion, involved in litigation); *Barden v. Sacramento*, 292 F.3d 1073 (9th Cir. 2002) (class action on question of first impression regarding physical access to public sidewalks, involved at litigation and appellate stages); *Deaf Counseling, Advocacy & Referral Agency, et al. v. San Francisco Airport*, Case No. C-02-1844 MEJ (EDL) (N.D. Cal.) (class action addressing communication access at San Francisco International Airport, involved in litigation and settlement); *Farrell v. Harper*, No. R603079344 (Alameda County Sup. Ct.) (taxpayer action addressing provision of services to youth with disabilities in the then-named California Youth Authority (now Division of Juvenile Justice), involved in litigation).

32.     Ms. Parks also has experience at the appellate level, particularly on education matters. For example, she was counsel on *D.D. v. Los Angeles Unified School District*, a case regarding exhaustion of administrative remedies in damages cases under the Americans with Disabilities Act, and argued the appeal during the Ninth Circuit *en banc* phase of the case.  This case was heard by the Ninth Circuit (plaintiff prevailed), Ninth Circuit *en banc* (defendant prevailed) and finally resolved by the U.S. Supreme Court by an order vacating the *en banc* decision and remanding for further consideration under recent Supreme Court caselaw (plaintiff prevailed).  143 S.Ct. 1081 (Mem.) (2023) *vacating* 18 F.4th 1043 (9th Cir. 2021) (*en banc*).

33.     Ms. Parks also argued *Los Angeles Unified School District v. Garcia*, 741 F.3d 922 (9th Cir. 2014), at the Ninth Circuit Court of Appeals, addressing the question of first impression regarding the responsible education agency for young adults with special education needs in county jails.  This was a companion matter to *Garcia v. Los Angeles Unified School District*, Case No. 09-8943 VBF (CTx), a class action that addressed the same issue.

34.     Ms. Parks was co-counsel with Learning Rights Law Center and pro bono attorneys from Skadden Arps on *M.S. v. Los Angeles Unified School District*, 913 F.3d 1119 (9th Cir. 2019), which addressed a question of first impression regarding a school district's obligation to provide the full continuum of placement options to foster youth who may also be placed in such settings by county child protective services agencies.  She also argued and prevailed at the Ninth Circuit in *A.P. v. Glendale Unified School District*, 2019 WL 2323805 (9th Cir. May 31, 2019), which addressed the ability of an underlying administrative settlement to waive damages claims in a federal lawsuit without a minor's compromise.

35.     Another example of her work in private practice includes *S.L. v. Downey Unified School District*, Case No. CV 13-6050 DDP(PJW) (C.D. Cal.), for which she was lead trial counsel, and which she litigated along with co-counsel Learning Rights Law Center and Wyner Law Offices.  This case addressed the previously un-litigated question of what schools are required to do in order to train and prepare for a student with an uncontrolled seizure disorder, as well as related academic accommodations required in that setting.  In that matter, she obtained summary judgment on liability, with the court

finding that the District had failed to train and prepare its staff for how to respond to S.L.'s seizures throughout her freshman year of high school.  The case resulted in a settlement of $900,000.

36.    Ms. Parks was lead counsel in *D.W. v. Los Angeles Unified School District*, Case No. 2:16-cv-4527 PSG (JCx) (C.D. Cal.), which addressed a school's systemic failure to provide accommodations and services to a young child with Type 1 Diabetes and resulted in a settlement that provided damages to the Plaintiff as well as changes to district-wide policies related to provision of services to children with Diabetes in the LA Unified School District.

37.    Ms. Parks was also lead counsel on *Jagielski-Bazzell, et al. v. Los Angeles Unified School District, et al.*, Case No. CV 15-02921 BRO (GJSx) (C.D. Cal.), in which she represented five deaf staff at LAUSD's school for the deaf regarding allegations that the school failed to ensure effective communication in emergency planning, preparedness, and response.  The precedent-setting settlement reached in this case resulted in significant injunctive relief, including a new visual public announcement system at the school, that would generate visual notifications to deaf staff in emergencies, as well as damages to the five plaintiffs.

### *Meredith J. Weaver*

38.    I joined DRA as a Fellowship Attorney in 2015, became a Staff Attorney in 2016, a Senior Staff Attorney in 2021, and was most recently promoted to Senior Counsel in 2025.  I received my B.A. from Brown University in 2010 and my J.D. from the University of Texas at Austin School of Law in 2014.  During law school, I was selected as a Human Rights Scholar by the Rapoport Center for Human Rights and Justice and interned with the Protection and Advocacy agency serving Texans with disabilities.

39.    Since joining DRA, my practice has included class action and systemic disability rights cases concerning equal access to public services and programs, technology, health care, financial institutions, and transportation.  I have been counsel of record in this matter since it was filed and managed the day-to-day aspects of this case on behalf of DRA.  I deposed one of Hertz's 30(b)(6) designees and an employee of its hand control provider, worked with Plaintiffs' expert witnesses, defended one of the plaintiff's depositions, and negotiated the proposed class settlement.

40. I have represented a number of other classes and putative classes, including in the following cases:

a. *Abused Deaf Women's Advoc. Servs. v. Nw. Hosp. & Med. Ctr.*, No. 2:16-cv-01121-RAJ (W.D. Wash.) and *Spencer v. Providence St. Joseph Health*, No. 2:22-cv-01033-RAJ (W.D. Wash.), putative class actions on behalf of persons with hearing disabilities challenging healthcare providers' failure to provide effective communication. These suits resulted in systemic settlements to overhaul the providers' policies and procedures and implement training to ensure effective communication for patients and companions with hearing disabilities.

b. *Am. Council of the Blind v. Hulu LLC*, No. 1:17-cv-12285-PBS (D. Mass.), a putative class action on behalf of persons who are blind and low vision challenging website inaccessibility and failure to provide audio description. This suit resulted in a systemic settlement pursuant to which Hulu made its streaming service accessible to blind customers by providing audio description and screen-reader access.

c. *Disabled In Action v. City of New York*, No. 1:16-cv-08354-VEC (S.D.N.Y.), a putative class action on behalf of persons with mobility disabilities who have been denied access to New York City Police Department precinct stations as a result of rampant architectural barriers. In 2020, Plaintiffs obtained partial summary judgment on liability (437 F. Supp. 3d 298).

d. *Garrett v. WHC Worldwide, LLC*, No. 25-cv-03904-YGR (N.D. Cal.), see paragraph 17.b, above.

e. *Liberty Resources, Inc. v. City of Philadelphia*, No. 2:19-cv-03846-HB (E.D. Pa.), a class action challenging the City of Philadelphia's failure to ensure that its pedestrian rights of way are accessible to people with mobility disabilities. The case resulted in a class settlement agreement requiring installation or remediation of 10,000 curb ramps within fifteen years, as well as policy changes to ensure that the City complies with its construction and maintenance obligations.

f. *McCullough v. Cal. Dep't of Developmental Services*, No. 3:20-cv-2958-SI (N.D. Cal.), an action on behalf of deaf individuals with intellectual and developmental disabilities challenging the state agency's discrimination against deaf people who depend on programs and services funded and administered by DDS. The case resulted in a class settlement providing systemic injunctive relief

including, in part, development of a communication assessment protocol, housemate matching system for deaf consumers, and specialized training to regional center staff and service providers.

g. *Ochoa v. City of Long Beach*, No. 2:14-cv-04307-DSF-FFM (C.D. Cal.), a class action challenging the City of Long Beach's failure to ensure that its sidewalks, crosswalks, curb ramps, and other pedestrian routes were accessible to people with mobility disabilities.  The case resulted in a class settlement agreement providing for approximately $200 million in accessibility improvements to the City's pedestrian routes over the thirty-year term, as well as policy changes to ensure that the City complies with its construction and maintenance obligations.

h. *Olson v. Sutter Health*, No. RG06-302354 (Cal. Super. Ct., County of Alameda), implementation of a 2008 Consent Decree resulting from a class action under the Americans with Disabilities Act ("ADA") and California state law requiring Sutter Health to remediate architectural barriers, install accessible medical equipment, and enhance policies and procedures to ensure accessible services for persons with mobility, visual, hearing, and speech disabilities at its hospitals throughout Northern California.

i. *Ruffa v. Soc'y for Hum. Res. Mgmt.*, No. 4:21-cv-05549-DMR (N.D. Cal.), a putative class action on behalf of persons who are deaf challenging SHRM's failure to provide effective communication during conferences and trainings; resulted in a systemic settlement requiring, in part, that SHRM provide American Sign Language and Computer Assisted Realtime Transcription during main portions of conferences and add closed captioning and transcripts to online training programs.

j. *Salsiccia v. Sharks Sports & Ent., LLC*, No. 5:19-cv-01546-BLF (N.D. Cal.), a putative class action on behalf of persons who are blind and low vision and have been denied access as a result of the Sharks' failure to make their application accessible via screen reader; resulted in a systemic settlement requiring, in part, that the Sharks bring their mobile application into compliance with accessibility guidelines.

### *Sean Betouliere*

41. Sean Betouliere developed this case prior to filing and led Plaintiffs' fact discovery efforts including deposing one of Hertz's 30(b)(6) designees.  He also played a key role in working with Plaintiffs' experts and preparing Plaintiffs' motion for class certification.

42.    Sean Betouliere is Senior Counsel at DRA, and a 2015 graduate of Berkeley Law (Boalt Hall).  Since joining DRA as a Fellowship Attorney in 2015, Mr. Betouliere has been lead counsel or counsel in multiple class action or impact lawsuits advancing the civil rights of persons with disabilities.  For example, he is currently counsel of record in the case of *Weimer, et al. v. United States Air Force*, EEOC Case No. 550-2021-00060X, an ongoing EEOC action involving discrimination against the Air Force's deaf civilian employees and applicants.  In that case, Mr. Betouliere obtained certification of a nationwide class and successfully defended that decision on appeal.  Mr. Betouliere is also counsel of record in *Smith v. City of Oakland*, No. 4:19-cv-05398-JST (N.D. Cal.), an ongoing class action challenging discriminatory administration of Oakland's rent stabilization program.  To our knowledge, this is the first case in the United States to apply federal disability rights laws to city rent control.

43.    Other representative cases Mr. Betouliere is working on or has worked on during his time at DRA include:

a.    *Cmty. Res. for Indep. Living v. Mobility Works of Cal.*, No. 4:18-cv-06012-JSW (N.D. Cal.), a class action challenging the company's refusal to install hand controls and adaptive devices in rental cars and requirement of a certification course for drivers with disabilities.  All challenged policies were revised as part of a nationwide class settlement.

b.    *Navarro v. City of Mountain View*, No. 5:21-cv-05381-NC (N.D. Cal.), a class action challenging an oversized-vehicle parking ban as discriminatory and unconstitutional, which settled for significant injunctive relief, including several miles of designated street parking, published maps indicating where vehicularly housed people could permissibly park, and changes to policies regarding notice and enforcement.

c.    *Geary v. City of Pacifica*, No.3:21-cv-01780-VC (N.D. Cal.), an action challenging a vehicle habitation ban and oversized vehicle parking ban as discriminatory and unconstitutional, which resulted in a settlement including recission of the habitation ban, several miles of designated street parking, a map showing where people could permissibly park, and a safe parking program.

d.    *Yesue v. City of Sebastopol*, No. 4:22-cv-06474-KAW (N.D. Cal.), an action challenging a vehicle habitation ban as discriminatory and unconstitutional.

e.    *Roque v. Seattle Housing* Authority, No. 2:20-cv-658-RAJ (W.D. Wash.), an action challenging discriminatory policies affecting residents with disabilities who rely on caregivers, which settled for injunctive relief and monetary damages.

f.    *Ochoa v. City of Long Beach*, No. 2:14-cv-04307-DSF-FFM (C.D. Cal.), see paragraph 40.g, above.

44.    During law school, Mr. Betouliere served as an extern to Magistrate Judge Donna M. Ryu (Ret.) in the Northern District of California, and interned with Disability Rights California and the Disability Rights Program of Legal Aid at Work (formerly the Legal Aid Society – Employment Law Center).

### Scott L. Gordon

45.    Scott L. Gordon was a Senior Staff Attorney at DRA from June 2024 to February 2026 and during that time worked on DRA's fact discovery and class outreach efforts in this case, including preparation of declarations for class certification and defense of class declarants' depositions.

46.    At DRA, Mr. Gordon also represented plaintiffs with disabilities in multiple other civil rights class actions and impact lawsuits including, among others, *Disabled In Action v. City of New York*, No. 1:16-cv-08354-VEC (S.D.N.Y.), discussed at paragraph 40.c, above; and *Lane v. City of Chicago*, No. 1:25-cv-10880 (N.D. Ill.), discussed at paragraph 17.a, above.

47.    Mr. Gordon served as trial counsel in *Griffin, et al. v. City of Los Angeles*, No. 2:24-cv-06312-RGK-MAR (C.D. Cal.), a class action on behalf of persons with mobility disabilities challenging the City of Los Angeles' failure to construct, modify and maintain its parks and park facilities so that they are fully and equally accessible to people with mobility disabilities.

48.    Prior to joining DRA, Mr. Gordon was an attorney at Schneider Wallace Cottrell Konecky LLP (now Schneider Wallace Cottrell Kim LLP) in Emeryville, California from January 2018 until May 2024, where he litigated class and collective actions on behalf of employees and consumers. At Schneider Wallace, Mr. Gordon specialized in class action litigation as a plaintiffs' attorney and played a major role in numerous successful cases, including the following:

a.    *Jones, et al. v. CertifiedSafety, Inc.*, No. 3:17-cv-02229-EMC (N.D. Cal.), resulting in a $6 million class and collective action settlement for wage and hour claims;

b.      *Amaraut, et al. v. Sprint/United Management Co.*, No. 3:19-cv-411-WQH-AHG (S.D. Cal.), resulting in a $7.6 million class and collective action settlement for wage and hour claims;

c.      *Miles v. Kirkland's Stores Inc.*, 89 F.4th 1217 (9th Cir. 2024), a successful appeal of the denial of class certification for a rest break class under California law.  Mr. Gordon was the co-lead attorney and drafted briefing for the plaintiff-appellant in this appeal;

d.      *Beissel, et al. v. Western Flyer Express LLC*, No. 5:21-cv-00903-R (W.D. Okla.), resulting in a $4.9 million class action settlement for deceptive trade practices, unlawful sale of business opportunities, and wage and hour claims; and

e.      *Biscardi, et al. v. Government Employees Insurance Co. d/b/a GEICO*, No. 8:21-cv-02240-GLR (D. Md.), resulting in a $6 million collective action settlement for unpaid wage claims.

49.      Mr. Gordon is a 2010 graduate of Temple University School of Law in Philadelphia, Pennsylvania.  Mr. Gordon did not pursue a career as an attorney immediately after graduating law school, but obtained a position as a law clerk at Schneider Wallace in 2014.  Mr. Gordon passed the California Bar Exam while working as a law clerk, and was promoted to an associate attorney position at Schneider Wallace upon his admission to the Bar.  Mr. Gordon was selected as a Super Lawyers Rising Star as an associate at Schneider Wallace.

### *Eliana Fisher*

50.      Eliana Fisher is a Wolinsky Fellowship Attorney who joined DRA in September 2024 and was admitted to the New York State Bar in May 2025.  Ms. Fisher was involved in Plaintiffs' class certification preparation, including defense of a declarant's deposition, and has led Plaintiffs' efforts to seek approval of the proposed class settlement.

51.      Since joining DRA, Ms. Fisher has represented several classes and putative classes, including in the following matters: *Disabled In Action v. City of New York*, No. 16-CV-8354 (VEC) (OTW) (S.D.N.Y.), discussed at paragraph 40.c, above; *Lane v. City of Chicago*, No. 25-cv-10880 (N.D. Ill.), discussed at paragraph 17.a, above; *Nat'l Ass'n of the Deaf v. SiriusXM Holdings Inc.*, No. 1:21-cv-10542-JAV (S.D.N.Y.), discussed at paragraph 17.f, above; *Cardew v. New York State Dept. of Corrs. & Cmty. Supervision*, No. 6:21-cv-06557-MAV-MJP (W.D.N.Y.), a putative class action on behalf of people who are incarcerated and have been denied necessary mobility-related accommodations; *M.F. v.*

*New York City Dep't. of Ed.*, No. 1:18-cv-06109-NG-SJB (E.D.N.Y.), a class action on behalf of students with Diabetes seeking full and equal access to New York City public schools, which resulted in a landmark settlement, extending meaningful access for students to field trips and school bus transportation; and *United Spinal Association v. Beth Israel Medical Center*, No. 13-cv-5131-PKC (S.D.N.Y), monitoring a class settlement agreement that requires a comprehensive remedial plan to improve access to health care for patients and hospital visitors with disabilities.

52. Ms. Fisher received her J.D. from the City University of New York School of Law in 2024 as well as a Bachelor of Arts *cum laude* from Barnard College and a Bachelor of Arts *magna cum laude* from Albert A. List College of Jewish Studies in 2016. During law school, Ms. Fisher worked as a Summer Law Clerk at DRA and interned at Beldock Levine & Hoffman LLP and Disability Rights New York, which is the Protection and Advocacy System and Client Assistance Program for persons with disabilities in New York State.

53. Prior to law school, Ms. Fisher regularly worked with people with disabilities at the New York Legal Assistance Group. From 2016 to 2017, she represented clients in contested Medicaid appeals at local government agency offices and administrative hearings as a paralegal in the Evelyn Frank Legal Resources Program. As a senior paralegal case handler in the Disability Advocacy Project from 2017 to 2021, Ms. Fisher represented people with disabilities at various stages of the Social Security Administration's appeals process, including hearings with federal administrative law judges, appeals to the Social Security Administration's Appeals Council, and at local Social Security offices.

## DRA'S BILLING PRACTICES

54. DRA does not charge any fees to its clients. DRA handles cases on what is essentially a contingent fee basis; if successful, at the end of a case, DRA seeks fees under civil rights statutes that allow the prevailing party to claim their reasonable fees and costs. If our clients are not the prevailing party, DRA does not recover any fees.

55. Many firms are hesitant to take contingent cases like this one because of the risk of loss, including the delay and uncertainty of payment, in addition to the disbursements that counsel must front. Unless contingent risk is accounted for by an award of attorneys' fees, plaintiffs seeking to enforce important civil rights cases would face substantial difficulty in obtaining counsel.

56.     There is only a small bar of available attorneys who have the specialized experience and the willingness to take on complex litigation work regarding systemic barriers to independence and community life faced by people with disabilities.  Cases like this one are generally unattractive to the bar because of (a) the specialized knowledge necessary to competently conduct such litigation, (b) the time entailed in litigating, (c) the delay in payment, (d) the substantial disbursements that counsel must front, and (e) the uncertainty of payment.

57.     At DRA, all billable personnel are required to maintain contemporaneous time records. For each time entry, personnel enter the name of the case, the amount of time in tenths of an hour spent on the task, the date of the task, and a brief description of the task.

58.     When DRA is preparing for a fee motion or settlement discussions, time records for the case are generated from DRA's timekeeping software, and an attorney or paralegal (under the direction of an attorney) is tasked with reviewing the records for potential reductions.  Each individual entry is also reviewed to determine if it contains work product, privileged communications, or the full names of minors or other persons whose names should be redacted.  The reviewing attorneys will exercise billing discretion, with input from a Supervising Attorney or the Chief Litigation Officer, to remove any work that would not have reasonably been billed to a fee-paying client.  The attorneys may also make other reductions in the interest of presenting a reasonable fee petition.

### DRA RATES

59.     DRA maintains a scale of hourly rates based upon each attorney's years of legal experience, taking into account market rates of private firms, fee orders for similar work, the expertise of DRA attorneys in disability rights law and related fields, as well as the complexity of the matters that DRA attorneys typically handle.

60.     DRA's rates are consistent with the rates charged by comparable law practices in the San Francisco Bay Area for similar class action work and complex litigation, including particular civil rights law practices that regularly prosecute or defend complex disability rights class actions.  DRA has determined that the rates it charges are reasonable for attorneys of our experience, reputation, and expertise practicing complex and class action litigation in the San Francisco Bay Area.

61. The following are DRA's 2025 hourly rates for timekeepers who worked on this litigation:

| Biller | Law School Graduation | 2025 Rate | Practice Years in 2025 |
|---|---|---|---|
| Shawna Parks | 1999 | $1,075 | 26 |
| Meredith J. Weaver | 2014 | $715 | 11 |
| Sean Betouliere | 2015 | $690 | 10 |
| Scott L. Gordon | 2010 | $665 | 7[1] |
| Eliana Fisher | 2024 | $410 | 1 |
| Senior Paralegals | N/A | $300 | N/A |
| Paralegals | N/A | $280 | N/A |

62. DRA's rates are regularly approved by federal courts. Examples include:

a. *Curran v. City of Oakland*, No. 23-CV-02354-RS, 2025 WL 3485360, at *6 (N.D. Cal. Dec. 4, 2025) (approving DRA's 2025 rates, including $1,075 for Ms. Parks, $565 for a 2019 graduate, $425 for a 2023 graduate, and $280 for paralegals);

b. *Bloom v. City of San Diego*, No. 17-cv-02324-AJB-DEB, 2024 WL4495512, at *6–8 (S.D. Cal. Oct. 14, 2024) (approving DRA's 2024 rates);

c. *Hinkle v. Baass*, No. 3:18-CV-06430-MMC, 2025 WL 2822689, at *7 (N.D. Cal. Oct. 3, 2025) (granting an unopposed fee motion using a lodestar analysis based on DRA's standard 2023 rates);

d. *Senior & Disability Action v. San Francisco Bay Area Rapid Transit Dist.*, No. 3:17-cv-01876-LB, Dkt. No. 156 at 4–6 (N.D. Cal. Apr. 18, 2024) (approving DRA's 2022 rates);

e. *McCullough v. Cal. Dep't of Developmental Servs.*, No. 3:20-cv-2958-SI, Dkt. No. 123 at 5–7 (N.D. Cal. Sept. 18, 2023) (approving DRA's 2022 rates);

f. *Navarro v. City of Mountain View*, No. 5:21-cv-05381-NC, Dkt. No. 137 at 5–7 (N.D. Cal. Feb. 28, 2023) (approving DRA's 2022 rates);

[1] As discussed above, Mr. Gordon graduated law school in 2010 but was first licensed in 2018.

g.      *Liberty Res., Inc. v. City of Philadelphia*, No. 2:19-cv-03846-HB, 2023 WL 3204018, at *11 (E.D. Pa. May 1, 2023) (approving DRA's 2021 rates);

h.      *Roque v. Seattle Hous. Auth.*, No. 2:20-cv-00658-JRC, 2021 WL 9649847, at *3 (W.D. Wash. Sept. 28, 2021) (approving DRA's 2021 rates);

i.      *T.G. v. Kern Cnty.*, No. 1:18-cv-00257-JLT, 2020 WL 3035199, at *22 (E.D. Cal. June 5, 2020) (approving DRA's 2020 rates);

j.      *Cmty. Res. for Indep. Living v. Mobility Works of Cal., LLC*, No. 18-cv-06012-JSW, 2020 WL 10505223, at *2 (N.D. Cal. May 22, 2020) (approving DRA's 2020 rates); and

k.      *Adam X. v. N.J. Dep't of Corr.*, No. 3:17-cv-00188-FLW-LHG, 2022 WL 621089, at *11 (D.N.J. Mar. 3, 2022) (approving DRA's 2020 rates).

63.     Attached as **Exhibit 1** is a true and correct copy of the declaration of Barrett S. Litt, an expert in attorney fee rates in California's major markets, filed in *Guerra v. West Los Angeles College*, No. 16-cv-6796-MWF (KSx) (C.D. Cal.), to which I have added yellow highlighting to indicate comparator rates that were drawn from Northern District of California references. I determined which comparator rates were drawn from Northern District of California references by cross-referencing Exhibit B to Mr. Litt's declaration, which includes citations for each rate. An excerpt from that exhibit is attached hereto as **Exhibit 2**. In this excerpt, I have highlighted in green the comparator rates drawn from Northern District references, along with the associated references.

64.     I believe DRA's rates are within the range of rates charged by and awarded to attorneys of similar skill and experience handling similarly complex federal litigation in this market.

**DRA'S FEES AND COSTS IN THIS MATTER**

65.     Attached hereto as **Exhibit 3** is a summary of DRA's fees and costs incurred in this matter through May 22, 2026.

66.     Attached as **Exhibit 4** is a true and correct copy of DRA's time records for this matter. The time records include the date the work was performed ("Date"), the name of the DRA professional who completed the work ("Professional"), the amount of time spent on the task ("Duration"), the hourly rate applied ("Rate"), the amount of fees associated with the task (i.e. Duration × Rate) ("Amount"), the

amount of fees billed for the task ("Billed Amount"), a narrative description of the work performed ("Description"), and whether the task was billed or not ("Billable Type").

67.    Consistent with its billing practices, in preparing this motion, DRA performed a careful review of its billing records and exercised billing judgment to account for duplication and inefficiencies. DRA does not seek fees for any time worked by attorneys who billed fewer than ten hours to the case. In addition, DRA performed a line-by-line review and exercised billing discretion to account for possible duplication and inefficiencies.

68.    DRA staffs all matters as efficiently as possible.  Given that DRA's work is contingency-fee based and our clients do not pay us, DRA has every incentive to staff cases as leanly as possible while still devoting enough resources to the matter to succeed in its clients' claims.

69.    Where feasible and efficient, DRA divided and delegated among attorneys and paralegals.  DRA managed the case to avoid duplication of litigation chores, prevent overstaffing any activity associated with the case or engaging in repetitious, otherwise unnecessary time expenditures.

70.    Plaintiffs' counsel worked a total of 1,458.2 hours through May 22, 2026.  In an exercise of billing judgment, DRA has not billed for 178.2 hours, or 12.2% of the time worked on this matter through May 22, 2026.  This amounts to a reduction of $95,619.50 in fees, or 10.9% of all fees incurred.  Thus, using DRA's standard 2025 hourly rates, Plaintiffs' lodestar is $783,028.00. *See* Ex. 3.

71.    The requested award of $600,000 in attorneys' fees and costs for all work completed through Final Approval thus reflects a discount of 23.4% on Plaintiffs' total attorneys' fees and costs incurred through May 22, 2026.  Furthermore, even the full award of $630,000 for attorneys' fees and costs incurred by Plaintiffs through the Term of the Agreement amounts to a reduction of 19.5% on Plaintiffs' total attorneys' fees and costs incurred through May 22, 2026.

72.    DRA will monitor implementation of the Agreement during its eighteen-month Term. Over the course of the Agreement's Term, I estimate that monitoring will require an additional 100 hours of work to review Hertz's quarterly reporting, meet and confer regarding any implementation issues, regularly update the class representatives, and address any class member questions or concerns that may arise.  Were the most junior attorney working on this case, Ms. Fisher, to complete all of this work, at her current 2025 billing rate, the fees would amount to $41,000.

73.    I believe that the amount sought in fees and costs is more than reasonable, given the amount of work done by counsel in this litigation.  This amount already represents a significant reduction from the total amount of fees incurred by DRA in this case, as measured by the number of hours incurred by each timekeeper, multiplied by the hourly billing rate of that timekeeper.

***Litigation Costs and Expenses***

74.    DRA has a system of tracking costs by assigning a specific case number to each case and using the case number when costs are incurred.

75.    DRA's litigation costs and expenses for the instant action included such items as filing fees, costs associated with chambers copies, process service and witness fees, court reporting fees, expert fees, and fees incurred in order to conduct class outreach.

76.    In total, DRA accrued $96,021.18 in costs during the pendency of this litigation.  DRA's costs and expenses are reflected in **Exhibit 3**.

77.    These costs and expenses were reasonably and necessarily incurred over the course of the more than two and a half years DRA spent investigating and litigating this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, and that this declaration is executed on this 28th day of May, 2026, in Austin, Texas.

Meredith J. Weaver
Attorneys for Plaintiffs and the Proposed Class