SHAWNA PARKS (CA BAR NO. 208301)
sparks@dralegal.org
MEREDITH J. WEAVER (CA BAR NO. 299328)
mweaver@dralegal.org
SEAN BETOULIERE (CA BAR NO. 308645)
sbetouliere@dralegal.org
Disability Rights Advocates
455 Market St., Ste 1940
PMB 509115
San Francisco, CA, 94105-2448
Tel: (510) 665-8644
Fax: (510) 665-8511

ELIANA FISHER (pro hac vice)
efisher@dralegal.org
Disability Rights Advocates
228 Park Ave. S
PMB 509115
New York, NY, 10003-1502
Tel: (212) 644-8644
Fax: (510) 665-8511

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

CARINA HO and CHRISTINA MILLS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

THE HERTZ CORPORATION; HERTZ GLOBAL HOLDINGS, INC.; and RENTAL CAR INTERMEDIATE HOLDINGS, LLC,

Defendants.

Case No. 3:24-cv-01066-MMC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Judge: Honorable Maxine M. Chesney
Date: August 21, 2026
Time: 9:00 a.m.

## TABLE OF CONTENTS

Notice of Motion and Motion ........ 1
Memorandum of Points and Authorities ........ 1
I. Introduction ........ 1
II. Factual Background ........ 2
A. Procedural and Factual History ........ 2
B. Summary of the Proposed Settlement Agreement ........ 3
1. The Settlement Class ........ 3
2. Injunctive Relief ........ 3
3. Reporting and Monitoring ........ 6
4. Duration of the Agreement ........ 7
5. Dispute Resolution ........ 7
6. Release of Class Claims ........ 7
7. Class Counsel's Attorneys' Fees, Expenses, and Costs ........ 7
C. The Court Preliminarily Approved the Agreement, Notice Has Been Provided, and No Objections Have Been Received. ........ 8
III. Legal Standard ........ 9
IV. Argument ........ 11
A. The Court Should Confirm its Initial Finding That the Proposed Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(a) and (b)(2). ........ 11
1. The Settlement Class is Sufficiently Numerous. ........ 11
2. The Settlement Class Satisfies Commonality. ........ 11
3. Plaintiffs' Claims are Typical of the Settlement Class. ........ 12
4. Plaintiffs and Their Counsel are Adequate Class Representatives. ........ 12
5. The Proposed Class Meets the Requirements of Rule 23(b)(2). ........ 13
B. Notice to the Settlement Class was Accomplished in the Manner Approved by the Court at the Preliminary Approval Stage. ........ 14
C. The Parties' Agreement is Fair, Reasonable, and Adequate and Should be Approved by the Court. ........ 15
1. Plaintiffs and Their Counsel Adequately Represented the Settlement Class. ........ 15
2. The Parties' Agreement is the Product of Arm's Length Negotiations. ........ 15
3. The Agreement Will Provide Significant Relief to the Settlement Class. ........ 16
4. The Parties' Agreement Treats all Settlement Class Members Equitably. ........ 19
5. Class Counsel's Experience and Recommendation Support Approval. ........ 19
6. The Reaction of Settlement Class Members to the Proposed Agreement Supports Approval. 20
V. Conclusion ........ 20

# TABLE OF AUTHORITIES

**Cases**

*Bakhtiar v. Info. Res., Inc.*,
No. 17-cv-04559-JST, 2021 WL 4472606 (N.D. Cal. Feb. 10, 2021) .......... 9

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008) .......... 13

*Cancilla v. Ecolab, Inc.*,
No. 12-cv-03001-JD, 2016 WL 54113 (N.D. Cal. Jan. 5, 2016) .......... 9, 14

*Gray v. Golden Gate Nat'l Recreational Area*,
279 F.R.D. 501 (N.D. Cal. 2011) .......... 14

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... passim

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 19

*Hernandez v. Cnty. of Monterey*,
305 F.R.D. 132 (N.D. Cal. 2015) .......... 11

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) .......... 20

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .......... 16, 18

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000) .......... 12

*In re MyFord Touch Consumer Litig.*,
No. 13-cv-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) .......... 15

*In re Tableware Antitrust Litig.*,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......... 16, 17

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012) .......... 10, 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .......... 19

*Officers for Just. v. Civ. Serv. Comm'n of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .......... 10

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) .......... 12, 14

*Rannis v. Recchia*,
380 F. App'x 646 (9th Cir. 2010) .......... 11

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) .......... 10, 16, 19

*Rosado v. Ebay Inc.*,
No. 5:12-cv-04005-EJD, 2016 WL 3401987 (N.D. Cal. June 21, 2016) .......... 9, 10

*Smith v. City of Oakland*,
339 F.R.D. 131 (N.D. Cal. 2021) .......... 12

*Uschold v. NSMG Shared Servs., LLC*,

333 F.R.D. 157 (N.D. Cal. 2019) ........ 19

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ........ 11

**Federal Statutes**

42 U.S.C. § 12205 ........ 18

**Other Authorities**

Fed. R. Civ. P. 23(e)(2) Advisory Committee's Notes to 2018 Amendments ........ 16

**Rules**

Fed. R. Civ. P. 23(a)(1) ........ 11

Fed. R. Civ. P. 23(a)(2) ........ 11

Fed. R. Civ. P. 23(a)(3) ........ 12

Fed. R. Civ. P. 23(a)(4) ........ 12

Fed. R. Civ. P. 23(b)(2) ........ 14

Fed. R. Civ. P. 23(e)(2) ........ 10, 15, 17

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE that on August 21, 2026 at 9:00 a.m. via Zoom, or as soon thereafter as can be heard, Plaintiffs Carina Ho and Christina Mills (collectively, "Plaintiffs") will and hereby do move the Court, in accordance with Federal Rule of Civil Procedure 23, for an Order and Entry of Judgment: (i) granting final approval of the proposed class action Settlement Agreement, ECF No. 73-5 ("Agreement"); (ii) certifying the proposed Settlement Class and appointing Plaintiffs and their counsel as representatives of the Settlement Class; (iii) retaining jurisdiction during the term of the Agreement for the purpose of enforcement thereof; and (iv) entering final judgment in accordance with the Proposed Order submitted herewith. Plaintiffs' motion is based upon this notice of motion and motion; the accompanying memorandum of points and authorities; the concurrently filed declaration and exhibits; all pleadings and papers on file in this action; and any oral argument that may be presented.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

Plaintiffs seek final approval of a class settlement that will ensure all potential Hertz Customers with disabilities who need Hand Controls[1] to drive a rental vehicle have greater access to Hertz's rental vehicles. Defendants The Hertz Corporation, Hertz Global Holdings, Inc., and Rental Car Intermediate Holdings, LLC (collectively "Hertz" or "Defendants") have committed to nationwide changes to company policies and practices addressing reservations for vehicles with Hand Controls that will make it easier for Settlement Class members to reserve such vehicles, expand Hand Control availability in minivans, provide training on Hand Controls for customer service representatives, and ensure that Settlement Class members receive the same prices that are available to Hertz customers who do not require Hand Controls. Agreement §§ III.A.1–2, III.B.

On May 1, 2026, the Court (a) conditionally certified the proposed Settlement Class identified in the Agreement; (b) provisionally appointed Plaintiffs as class representatives and Disability Rights Advocates ("DRA") as Class Counsel; (c) preliminarily approved the Agreement; (d) approved the

[1] All capitalized terms are defined in Section II of the Agreement.

revised proposed form of notice to the Settlement Class, ECF No. 97-1 ("Class Notice"); (e) directed notice to the Settlement Class; and (f) scheduled a Fairness Hearing. ECF No. 99 ("Prelim. Approval Order"). Class Counsel has distributed the Class Notice in accordance with this Court's Order. ECF No. 102 ("Fisher Notice Decl.") ¶¶ 2–8; Prelim. Approval Order 10–11. No member of the Settlement Class has submitted any objection.

The Agreement is fair, adequate, and reasonable, and satisfies all the criteria for final approval under Federal Rule of Civil Procedure 23. Implementation of the Agreement will result in expanded access to Hertz's fleet for potential Hertz Customers with disabilities who need Hand Controls to drive a rental vehicle, and the Agreement's significant benefits far outweigh the risks of further litigation. Therefore, Plaintiffs respectfully request that the Court: (i) grant final approval of the Agreement; (ii) certify the proposed Settlement Class and appoint Plaintiffs and their counsel as representatives of the Settlement Class; (iii) retain jurisdiction during the term of the Agreement for the purpose of enforcement thereof; and (iv) enter final judgment in accordance with the Proposed Order submitted herewith.

## II. FACTUAL BACKGROUND

### A. Procedural and Factual History

Plaintiffs filed this suit on February 22, 2024 to address Hertz's discriminatory policies and practices regarding the installation of Hand Controls in rental vehicles and reservations for such vehicles. ECF No. 1 ("Compl."). Defendants filed an Answer on November 5, 2024 and an Amended Answer on November 26, 2024. ECF Nos. 44 & 46. Pursuant to the United States District Court for the Northern District of California's General Order 56, the Parties held a mediation session in September 2024, but were unable to reach agreement. ECF No. 25. Thus, the Parties proceeded with litigation, and engaged in contentious fact and expert discovery practice for well over a year on issues including, but not limited to, the reasonableness of Plaintiffs' requested modification and any applicable defenses thereto. ECF No. 101 ("Weaver Fee Decl.") ¶¶ 3–4. After exchanging expert reports, the Parties requested a stay of litigation in order to focus on settlement negotiations. ECF No. 59. At the time the Court granted the Parties' request to stay litigation, Plaintiffs were working with their experts on rebuttal reports, preparing six non-party declarants for depositions noticed by Hertz, and finalizing their motion

for class certification, which would have been due two weeks after the Court stayed litigation. Weaver Fee Decl. ¶¶ 8, 10; ECF Nos. 58, 62.

After completing fact discovery and exchanging expert reports, the Parties entered settlement discussions with the assistance of Magistrate Judge Spero, who held a total of three settlement conferences with the Parties. Weaver Fee Decl. ¶ 11; ECF Nos. 60, 63, 72. The Parties ultimately reached agreement on a proposed class settlement during the final settlement conference with Magistrate Judge Spero on February 17, 2026 and executed the Agreement on March 5, 2026. Weaver Fee Decl. ¶ 13; Agreement 11–12.

### B. Summary of the Proposed Settlement Agreement

The Agreement includes the following negotiated terms:

#### 1. The Settlement Class

As set forth in the Agreement, the Settlement Class is defined as: "all potential Hertz Customers with disabilities who need Hand Controls to operate a rental vehicle." Agreement § II. As the Court noted when granting preliminary approval, the proposed Settlement Class makes no substantive changes to the definition of the nationwide class ("the ADA Class") proposed in Plaintiffs' Complaint, but does not include the California subclass (the "Unruh Subclass") that was proposed in the Complaint. Prelim. Approval Order 3. Given that the more expansive Settlement Class achieves the same relief for the subclass proposed in the Complaint, omission of the Unruh Subclass from the Agreement is appropriate. *Id.*

#### 2. Injunctive Relief

##### a. Provision of Hand Controls

The Agreement requires Hertz to purchase twenty minivans with the capability for left-side Hand Controls ("the Vans") and to make them available for the exclusive use of Customers who use Hand Controls within nine months of the Effective Date[2]. Agreement § III.A.1. Per the Agreement, Hertz

[2] The Effective Date shall be the date 31 days after the Court issues an order granting final approval of the Agreement and final judgment has been entered. In the event of an unsuccessful appeal by a non-party, the "Effective Date" means the date upon which all appeal matters are concluded. Agreement § II.

will initially station the Vans at the airport locations set out in Appendix B to the Agreement ("Hub Locations"), which have been strategically chosen based on Hertz's historical data on customer demand for Hand Control rentals and geographic reach. *Id.* § III.A.1.b. The Agreement includes a process for regularly assessing whether any Hub Location should be changed, and a process for resolution should the Settlement Class object to any proposed change. *Id.* The Vans will be reservable for pick up at any corporate owned Hertz location within a 200-mile radius[3] of any Van's Hub Location. *Id.* Hertz will guarantee that the Vans will be available for pre-paid, round-trip reservations that are made with seven days' notice.[4] *Id.* §§ III.A.1.c & III.A.5. Should Hertz be unable to fulfill such a reservation, it must contact the Customer to determine their preferred alternative and attempt to provide a suitable alternative vehicle with left-side Hand Controls or take other necessary steps to fulfill the Van reservation, including but not limited to, assisting the Customer with reserving a van with left-side Hand Controls from another vehicle rental company. *Id.*

Within nine months of the Effective Date, Hertz will also provide right-side Hand Controls on minivans in its fleet. Agreement § III.A.2.

Furthermore, the Agreement requires Hertz to continue providing left-side Hand Controls in the following (or similar) vehicles, in which they are currently available due to the lack of knee bolster airbags: (i) Kia K4, (ii) Chevrolet Equinox/GMC Terrain, and (iii) Chevrolet Tahoe/GMC Yukon. *Id.* § III.A.3. In the event that the manufacturer modifies one of these vehicle models to include knee bolster airbags or in any other way that impacts the safe installation of left-side Hand Controls, Hertz will promptly notify Class Counsel and will maintain 80 of a model year of the impacted vehicle model that does not have knee bolster airbags. *Id.* § III.A.3.a. Hertz will station two of these earlier models at each Hub Location to be rented using the processes applicable to the Vans. *Id.*

Under the Agreement, Hertz will also continue providing right-side Hand Controls in the following (or similar) vehicles, in which they are currently available: (i) Nissan Altima, (ii) Chevrolet

---

[3] The "radius" will be measured as the "flat" geometric radius from the Hub Location, rather than the driving distance, and only be consider on land. Agreement 3 n.2

[4] Seven days' notice is necessary to ensure adequate time for completion of necessary safety inspections and transporting the vehicle to the pick-up location. *See* Agreement §§ III.A.1 & III.A.5.

Malibu, (iii) Chevrolet Equinox/GMC Terrain, (iv) Chevrolet Tahoe/GMC Yukon. *Id.* § III.A.4. Should Hertz wish to discontinue the provision of right-side Hand Controls in any of these vehicle models, it will notify Class Counsel and the Parties will negotiate regarding what steps will be taken to ensure that Customers who need right-side Hand Controls continue to have access to a range of vehicles. *Id.* § III.A.4.a.

For all Hand Control rentals other than the Vans, Hertz will provide vehicles within 8 hours' notice for pick up at Major Airport Locations (as listed in Appendix A to the Agreement), and within 24 hours' notice at other corporate owned locations. *Id.* § III.A.5.

**b. Policies and Procedures**

The Agreement requires Hertz to continue ensuring that Customers can reserve a rental vehicle with Hand Controls online, by phone, and in-person. Agreement § III.B.1.

**i. Web Reservations**

Under the Agreement, Hertz must:

- Maintain an accurate list of the vehicles that can be rented with left-side and/or right-side Hand Controls on the Hertz Accessibility Webpage, including all information necessary to identify those vehicles on the "Select Vehicle" page within the online booking process. Agreement § III.B.2.a.
- Designate a position responsible for ensuring that the information on the Accessibility Webpage remains accurate. *Id.* § III.B.2.b.
- Modify the "Accessibility Options" dropdown menu (available during the reservation process under the heading "Additional Amenities") such that, when the selected vehicle does not have left-side *and* right-side Hand Controls available for selection, there will be a hyperlink to the Accessibility Webpage where the Customer can find information on the specific vehicles that are available with Hand Controls. *Id.* § III.B.2.c.

**ii. Phone Reservations**

The Agreement requires Hertz to train Customer Support Representatives who answer its main Customer Support phone numbers to ensure the representatives understand what Hand Controls are and that they should promptly transfer individuals requesting Hand Controls to Special Services. Agreement § III.B.3.

**iii. Updates to Hertz's Reservation System(s) and/or Policies**

The Agreement requires Hertz to update its reservation system(s) and/or policies to:

- Ensure that the need for Hand Controls is specifically communicated to the pick-up location. Agreement § III.B.4.a.
- State in its "Customers with Disabilities" policy: "Since installation of hand controls and moving the installed vehicle to the applicable rental location can be time consuming, management (or a designated staff member) should contact the customer via phone or e-mail when an applicable reservation appears on the reservation manifest." *Id.* § III.B.4.b.
- Ensure that if a Customer has reserved a vehicle with Hand Controls within the notice timelines set forth in Section III.A.5 of the Agreement, but the vehicle is not ready at the requested pick-up time, installation will be prioritized, and the Customer will receive a discount. *Id.* § III.B.4.c.
- Ensure that if, for any reason, Hertz cannot install Hand Controls on the cheapest vehicle available for rent at a given location for the desired date and time, the cheapest vehicle at that location for which it can install Hand Controls is offered at the then-current "Compact/Economy" rate, or the lowest rate available for a non-electric vehicle, which will be reflected at checkout. *Id.* § III.B.4.d.

**c. Hand Control Assistance and Feedback**

Under the Agreement, Hertz will continue to maintain and publish on its Accessibility Webpage a centralized process for Customers to obtain assistance and/or lodge complaints regarding reservation of vehicles with Hand Controls. Agreement § III.C.1. Hertz's Special Services team will continue addressing Customer requests for assistance and complaints regarding reservation of vehicles with Hand Controls. *Id.* § III.C.2.

**3. Reporting and Monitoring**

The Agreement requires Hertz to maintain logs to track the following information:

- Customer reservations for Hand Control equipped vehicles, including the: (a) reservation number; (b) date of reservation; (c) pick-up location; (d) vehicle class reserved; and (e) whether left-side or right-side Hand Controls were requested. Agreement § III.A.6.

- Customer assistance requests and complaints including: (a) the nature of the request or complaint; (b) the date the request or complaint was received; (c) the steps taken to resolve the request or complaint; and (d) the date on which the request or complaint was resolved. *Id.* § III.C.2.

These logs will be provided to Class Counsel on a quarterly basis. *Id.* § IV.2. Hertz will notify Class Counsel within fourteen days after the deadlines for its completion of obligations under the Agreement. *Id.* § IV.1.

**4. Duration of the Agreement**

The term of the Agreement will be eighteen months from the Effective Date. *Id.* § VIII.A.

**5. Dispute Resolution**

The U.S. District Court for the Northern District of California will maintain jurisdiction of this case for the purpose of enforcing this Agreement, including the resolution of any disputes that arise hereunder, for the Term of the Agreement. Agreement § V. The Parties have agreed to a dispute resolution process that requires the Parties to first meet and confer in good faith to attempt to resolve disputes, and then proceed to mediation if they are not able to resolve the dispute independently. *Id.* §§ V.A–B. If the dispute cannot be resolved through these processes, any remaining disputes will be submitted for binding resolution by the Court under the Court's continuing jurisdiction over this case. *Id.* § V.C.

**6. Release of Class Claims**

The Agreement does not include any explicit release of claims, rights, demands, complaints, actions, suits, or causes of action for injunctive, declaratory, or compensatory relief. *See generally* Agreement. However, pursuant to the Agreement, upon termination thereof, the Parties will jointly move the Court to dismiss the Action with prejudice. Agreement § VIII.A. As such, in exchange for the substantial injunctive relief that the Parties' Agreement guarantees, Settlement Class members will only release the claims brought in this action, as set forth in the Complaint. *See* Compl. ¶¶ 70–108.

**7. Class Counsel's Attorneys' Fees, Expenses, and Costs**

Consistent with the Agreement, Plaintiffs filed a motion seeking an award of reasonable attorneys' fees, expenses, and costs in the amount of $630,000 for fees, expenses, and costs incurred through the term of the Agreement. *See* Agreement § VI; ECF No. 100 ("Pls.' Fee Mot."). As detailed

in Plaintiffs' fee motion, an award of $630,000 is approximately 80.5% of Class Counsel's lodestar through May 22, 2026. Pls.' Fee Mot. 6.

### C. The Court Preliminarily Approved the Agreement, Notice Has Been Provided, and No Objections Have Been Received.

On March 6, 2026, Plaintiffs filed a motion for preliminary approval of the Agreement, which Defendants did not oppose. ECF Nos. 73, 86. On May 1, 2026, the Court: (a) provisionally certified the Settlement Class and provisionally appointed Plaintiffs as Settlement Class representatives and DRA as Class Counsel; (b) granted preliminary approval of the Agreement; (c) approved the form of the proposed Class Notice; (d) approved the parties' revised plan for providing notice to the Settlement Class; and (e) scheduled a Fairness Hearing for August 21, 2026. Prelim. Approval Order 11–13.

Plaintiffs effectuated notice to the Settlement Class pursuant to the Court's Order and the procedures set forth in Plaintiffs' Supplemental Brief in Support of Preliminary Approval, ECF No. 95. Fisher Notice Decl. ¶¶ 2–8. The Class Notice explained the case, the terms of the Agreement (including injunctive relief), how to object to the Agreement, and the amounts requested for Class Counsel's attorneys' fees and costs. ECF No. 97-1 ("Class Notice").

DRA posted the Class Notice, the Court's Order Granting Preliminary Approval of Class Action Settlement (ECF No. 99), the Proposed Class Settlement Agreement (ECF No. 73-5), and the Class Action Complaint (ECF No. 1) on its website at https://dralegal.org/class-notice/ho-v-hertz/ ("Webpage") on May 5, 2026. Fisher Notice Decl. ¶ 2. At that time, the Webpage stated that, "Plaintiffs' Motion for Attorneys' Fees and Costs will be added upon filing." *Id.* DRA added Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs (ECF No. 100) to the Webpage on May 29, 2026, when the motion was filed. *Id.* ¶ 3. From May 29, 2026 to the present, these documents have remained available on the Webpage. Decl. Eliana Fisher Supp. Pls.' Mot. Final Approval ("Fisher Final Approval Decl.") ¶¶ 2, 4. DRA also posted a notification with a link to the Class Notice on its social media accounts on Facebook, Instagram, and LinkedIn on May 7, 2026. Fisher Notice Decl. ¶¶ 5(a)–(c).

On May 27, 2026, a notification of the proposed class settlement with a link to the Class Notice was published in the United Spinal Association's New Mobility newsletter, which was distributed via email to subscribers. *Id.* ¶ 6. On May 28, 2026, the Muscular Dystrophy Association published a

notification of the proposed class settlement with a link to the Class Notice in its monthly newsletter, which was distributed via email to subscribers. *Id.* ¶ 7. On May 29, 2026, Paralyzed Veterans of America ("PVA") published a notification regarding the proposed class settlement with a link to the Webpage in its "Washington Update" newsletter, which was distributed to all thirty-three PVA chapters. *Id.* ¶ 8. A representative of PVA reported that a notification regarding the proposed class settlement with a link to the Webpage or the Notice would also be published in PVA's monthly member newsletter, which was scheduled to be distributed to members on June 5, 2026. *Id.*

The Class Notice listed an email address, mailing address, and phone number for Class Counsel so that Settlement Class members could inquire about the lawsuit and/or Agreement. Class Notice 7. During the notice period, Class Counsel received a number of communications from hand control users with positive feedback on the Agreement and did not receive any negative feedback. Fisher Final Approval Decl. ¶¶ 6–8. The Class Notice also included an email address and mailing address for submitting objections to the Agreement. Class Notice 6. The deadline for submitting objections was July 15, 2026. Prelim. Approval Order 13. No Settlement Class members objected to the Agreement. Fisher Final Approval Decl. ¶ 5.

## III. LEGAL STANDARD

Under Rule 23(e) of the Federal Rules of Civil Procedure, a class action settlement that is binding on absent class members requires court approval. Approval is a "two-step process": (1) preliminary approval of the settlement, and (2) after notice is provided to the class, final determination that the settlement is "fair, reasonable, and adequate." *Bakhtiar v. Info. Res., Inc.*, No. 17-cv-04559-JST, 2021 WL 4472606, at *5–6 (N.D. Cal. Feb. 10, 2021) (citing Fed. R. Civ. P. 23(e)(2)).

At final approval, the Court "begins with an examination of whether class treatment remains appropriate" to confirm final certification of any class preliminarily certified for settlement. *Rosado v. Ebay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *2 (N.D. Cal. June 21, 2016). The Court must then "determine[] that notice to the class members was accomplished . . . as approved by the Court at the preliminary approval stage." *Cancilla v. Ecolab, Inc.*, No. 12-cv-03001-JD, 2016 WL 54113, at *3 (N.D. Cal. Jan. 5, 2016); *see also Rosado*, 2016 WL 3401987, at *2–3 (finding that the parties "fully and properly implemented" the court-approved notice plan and class notices). Finally, "[h]aving already

completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits." *Rosado*, 2016 WL 3401987, at *1. The Court should "reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Ultimately, "the decision to approve or reject a settlement is committed to the sound discretion of the trial judge because [they are] exposed to the litigants and their strategies, positions, and proof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (citation modified).

Specifically, Rule 23(e)(2) requires the Court to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Moreover, under well-settled Ninth Circuit precedent, in order to assess a class action settlement, courts must balance several similar factors, including the following "*Hanlon* factors":

> the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1026).

The Court must demonstrate comprehensive consideration of all factors; however, in conducting this analysis, the Ninth Circuit has noted that "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964 (9th Cir. 2009) (quoting *Officers for Just.*, 688 F.2d at 625). Here, the proposed Agreement meets the requirements for final approval.

## IV. ARGUMENT

### A. The Court Should Confirm its Initial Finding That the Proposed Settlement Class Meets the Requirements of Federal Rule of Civil Procedure 23(a) and (b)(2).

The Court previously determined that each of the requirements of Rule 23(a) and (b)(2) for class certification are satisfied for the purposes of the proposed Agreement and the Settlement Class. Prelim. Approval Order 3. The Settlement Class may be properly certified at this time consistent with the Court's prior analysis.

#### 1. The Settlement Class is Sufficiently Numerous.

The first element of Rule 23(a) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While Rule 23(a)'s numerosity requirement is "not tied to any fixed numerical threshold," courts generally find that classes of forty or more members satisfy the requirement. *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010); *see also Hernandez v. Cnty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015) ("A class or subclass with more than 40 members raises a presumption of impracticability based on numbers alone.") (citation modified). The numerosity requirement is satisfied here, where available data indicates that the class likely numbers in the hundreds. *See* Prelim. Approval Order 4. The Court should therefore confirm its finding that the Settlement Class is sufficiently numerous.

#### 2. The Settlement Class Satisfies Commonality.

The second element of Rule 23(a) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied where the plaintiff alleges the existence of a "common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Here, Plaintiffs' challenge to Defendants' company-wide discriminatory policies and practices regarding the reservation of rental vehicles with Hand Controls—which apply to all Settlement Class members—satisfies the commonality requirement. Prelim. Approval Order 4–5. The several common issues of law and fact raised by Plaintiffs' claims also rely on common contentions that are not affected by the circumstances of any individual class members. *Id.* Where such questions are capable of

generating commons answers—as is the case here—they are appropriate for class-wide resolution. *Id.* Moreover, as discussed in more detail above, Plaintiffs sought and achieved systemic changes, including changed policies regarding provision of and reservation process for rental vehicles with Hand Controls that will be implemented nationwide. *See supra* Section II.B. The Court should thus confirm its finding that the proposed Settlement Class satisfies Rule 23(a)'s commonality requirement.

**3. Plaintiffs' Claims are Typical of the Settlement Class.**

The third element of Rule 23(a) requires that the claims of the representative parties are typical of each class member. Fed. R. Civ. P. 23(a)(3). Rule 23(a)'s typicality requirement is met so long as the named plaintiffs' claims are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon*, 150 F.3d at 1020). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Smith v. City of Oakland*, 339 F.R.D. 131, 141 (N.D. Cal. 2021) (citation modified). Plaintiffs and members of the Settlement Class all need Hand Controls to operate a rental vehicle due to a disability and are subject to the same discriminatory Hertz policies and practices regarding reservations for vehicles with Hand Controls, making Plaintiffs' claims typical of Settlement Class members'. *See* Prelim. Approval Order 5. Plaintiffs also allege the same harm, rely on the same legal theories, and seek the same declaratory and injunctive relief on behalf of themselves and all members of the Settlement Class. *Id.* The Court should thus confirm its finding that the Settlement Class satisfies Rule 23(a)'s typicality requirement.

**4. Plaintiffs and Their Counsel are Adequate Class Representatives.**

The final element of Rule 23(a) requires that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The class is adequately represented so long as the named plaintiffs and their counsel do not have any conflicts of interest with other class members and will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462–63 (9th Cir. 2000), *as amended* (June 19, 2000).

Here, there are no conflicts between Plaintiffs and other Settlement Class members. Prelim. Approval Order 8; ECF No. 73-3 ("Ho Decl.") ¶ 19; ECF No. 73-4 ("Mills Decl.") ¶ 19. The

Agreement provides consistent injunctive relief for Plaintiffs and every member of the proposed Settlement Class. Prelim. Approval Order 6; *see supra* Section II.B (discussing relief provided by the Agreement). In addition, Plaintiffs have vigorously represented the Settlement Class and pursued this outcome on behalf of the Class and will continue to do so. Prelim. Approval Order 6, 8; Ho Decl. ¶¶ 14–18; Mills Decl. ¶¶ 12–18. Plaintiffs also have knowledge of the case and their duties as Class representatives and support the Agreement. Ho Decl. ¶¶ 14–21; Mills Decl. ¶¶ 15–22.

Finally, "[a]dequate representation of counsel is usually presumed in the absence of contrary evidence." *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 349 (N.D. Cal. 2008) (citations omitted). Counsel may demonstrate their qualifications with previous experience litigating class action lawsuits. *See Hanlon*, 150 F.3d at 1021 (considering affidavits showing class counsel's experience prosecuting similar class action cases to determine adequacy of counsel).

Class Counsel fully vetted the claims in this action and has vigorously pursued this action on behalf of the proposed Settlement Class, and ultimately succeeded in negotiating an agreement that will enhance proposed Settlement Class members' access to Hertz's fleet. Prelim. Approval Order 6, 8. Furthermore, Class Counsel has no known conflicts of interest with any Settlement Class member and is committed to monitoring implementation of the Agreement throughout its eighteen-month term. *See id.* at 8. Class Counsel in this case also has extensive experience litigating class action suits, including other similar disability discrimination class actions against private entities, and monitoring the resulting class settlements. *See, e.g.*, Weaver Fee Decl. ¶¶ 17, 40, 43. Based on this significant relevant experience, Class Counsel has determined that the injunctive terms and other provisions contained in the Agreement will adequately protect the rights of Plaintiffs and the Settlement Class that this case sought to vindicate. *See* ECF No. 73-2 ("Weaver Prelim. Approval Decl.") ¶ 54; Prelim. Approval Order 6. Moreover, Plaintiffs and Class Counsel are well aware that any litigated result would have required the expenditure of significant time and resources by the Parties and the Court and may have ended with no benefits to the class if Defendants were to prevail. Weaver Prelim. Approval Decl. ¶¶ 56–59. The Court should therefore affirm that Rule 23(a)'s adequacy requirement is satisfied here.

#### 5. The Proposed Class Meets the Requirements of Rule 23(b)(2).

Under Rule 23(b)(2), a defendant must have "acted or refused to act on grounds that apply

generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). The primary role of this rule "has always been the certification of civil rights class actions." *Parsons*, 754 F.3d at 686. The rule is "almost automatically satisfied in actions primarily seeking injunctive relief." *Gray v. Golden Gate Nat'l Recreational Area*, 279 F.R.D. 501, 520 (N.D. Cal. 2011) (quoting *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)).

Here, Plaintiffs challenge Defendants' policies and practices applicable to all Settlement Class members and seek broad injunctive relief on behalf of all Settlement Class members to address the deficiencies in Defendants' policies and practices. Prelim. Approval Order 6–7. The proposed Agreement will benefit all Settlement Class members. Every Settlement Class member will have the opportunity to reserve minivans and other vehicles with Hand Controls and to benefit from Defendants' training requirements and revised policies. Furthermore, as the Court noted in preliminarily approving the Agreement, the Settlement Class seeks only injunctive relief to address the alleged discrimination and does not seek any damages on behalf of the class nor release any such claims. *Id.*

The Settlement Class meets all requirements of Rule 23(a) and (b)(2) and should be certified.

**B. Notice to the Settlement Class was Accomplished in the Manner Approved by the Court at the Preliminary Approval Stage.**

After confirming that final certification of a class preliminarily certified for settlement is appropriate, the Court must then "determine[] that notice to the class members was accomplished . . . as approved by the Court at the preliminary approval stage." *Cancilla*, 2016 WL 54113, at *3. Prior to the deadline to complete class notice and consistent with the Court's Preliminary Approval Order:

(1) DRA posted the Class Notice, the Order Granting Preliminary Approval of Class Action Settlement, the Proposed Class Settlement Agreement, the Class Action Complaint, and Plaintiffs' Motion for Reasonable Attorneys' Fees and Costs on the Webpage;

(2) DRA posted a notification with a link to the Class Notice on its Facebook, Instagram, and LinkedIn social media accounts; and

(3) a notification of the proposed class settlement with a link to the Class Notice was published in: (i) an advertisement in the United Spinal Association's New Mobility newsletter, (ii) the

Muscular Dystrophy Association's monthly newsletter, and (iii) PVA's "Washington Update" newsletter.

Fisher Notice Decl. ¶¶ 2–8.

### C. The Parties' Agreement is Fair, Reasonable, and Adequate and Should be Approved by the Court.

In making a final fairness determination, Rule 23 requires courts to consider: (1) the adequacy of representation of the class; (2) the arm's-length nature of the negotiations leading to the proposed settlement; (3) the adequacy of the relief provided to the class, considering, among others, the costs, risks, and delay of further litigation, and the terms of any proposed award of attorneys' fees; and (4) the equitable treatment of class members relative to one another. *See* Fed. R. Civ. P. 23(e)(2); *see also Lane*, 696 F.3d at 819 (enumerating *Hanlon* factors).

#### 1. Plaintiffs and Their Counsel Adequately Represented the Settlement Class.

In determining whether a class has been adequately represented, courts consider the same "adequacy of representation" questions that are relevant to class certification. *See In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019) (relying on findings from class certification that named plaintiffs had no conflicts of interest with and could adequately represent other class members to find that the adequacy of representation prong was satisfied). As discussed above in Section IV.A.4, this requirement is satisfied. First, Plaintiffs and Class Counsel have no conflicts of interest with the Settlement Class. Mills Decl. ¶ 19; Ho. Decl. ¶ 19; Weaver Prelim. Approval Decl. ¶ 53. Second, Plaintiffs have vigorously advanced the interests of the Settlement Class, including by responding to discovery, participating in each mediation and settlement conference, and providing input throughout the Parties' settlement negotiations, resulting in an Agreement that will make Defendants' services significantly more accessible to drivers with disabilities who need Hand Controls to operate a vehicle. Mills Decl. ¶¶ 16–18; Ho Decl. ¶¶ 17–18; *see* Prelim. Approval Order 8. The Court should therefore find that this Rule 23(e)(2) factor weighs in favor of approval.

#### 2. The Parties' Agreement is the Product of Arm's Length Negotiations.

Rule 23(e)(2)(B) assesses whether the proposed settlement was reached at arm's length, without

"the absence of information illuminating the value of plaintiffs' claims." *Hanlon*, 150 F.3d at 1027; *see also Rodriguez*, 563 F.3d at 965 ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution").

Here, the Parties' proposed Agreement is the product of over seven months of arm's length negotiations, which were conducted over the course of three settlement conferences before Magistrate Judge Spero, and many additional exchanges between the Parties. Weaver Fee Decl. ¶ 11; Weaver Prelim. Approval Decl. ¶ 10. As the Advisory Committee has recognized, "the involvement of a neutral or court-affiliated mediator or facilitator in [the] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests." Fed. R. Civ. P. 23(e)(2) Advisory Committee's Notes to 2018 Amendments. "Furthermore, the negotiations were adversarial and only took place after the Parties had completed full fact discovery and disclosed experts who produced competing reports on a key issue in dispute." Prelim. Approval Order 8; *see also* Weaver Fee Decl. ¶¶ 11–13. Where, as here, an agreement is the product of "serious, informed, non-collusive negotiations" conducted by experienced counsel who have "a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses," approval is appropriate. *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079–80 (N.D. Cal. 2007).

The Agreement withstands the heightened level of scrutiny applicable to pre-certification class actions, which are examined for "evidence of collusion or other conflicts of interest." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Here, "there are no signs of collusion and the amount of attorneys' fees stipulated as reasonable by the Parties will neither be disproportionate to the value of the Settlement Class's relief nor impact the relief provided to the Settlement Class." Prelim. Approval Order 8–9. Moreover, the Agreement neither creates a settlement fund nor releases Class damages claims, and provides the Settlement Class with injunctive relief only. The Court should therefore find that this Rule 23(e)(2) factor weighs in favor of approval.

**3. The Agreement Will Provide Significant Relief to the Settlement Class.**

The third factor requires courts to consider whether "the relief provided for the class is adequate, taking into account" (i) "the costs, risks, and delay of trial and appeal"; (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member

claims"; (iii) "the terms of any proposed award of attorney's fees, including timing of payments"; and (iv) "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i)–(iv). In determining whether the Agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079–80.

Here, the Agreement, which provides significant benefits to Settlement Class members, reflects an excellent result for the Class. Under the Agreement, Settlement Class members will have various vehicle categories available to them because, in addition to expanding Hand Control availability to minivans, the Agreement requires Defendants to continue providing both Right-side and Left-side Hand Controls in at least five other vehicle models, including sedans and a range of SUV sizes. Agreement § III.A.1–4. Furthermore, the Agreement requires revisions to Defendants' reservations systems and policies that will provide benefits that help save Settlement Class members time and money by: (1) ensuring that vehicles with Hand Controls do not cost more than the lowest-priced non-electric rental category available for the same rental; (2) taking steps to ensure the reserved vehicle has Hand Controls installed at the time of pick-up; (3) prioritizing installation of Hand Controls and providing a discount if the reserved vehicle is not ready at the requested pick-up time; and (4) streamlining Settlement Class members' ability to make reservations by providing additional information on the availability of Hand Controls in Hertz's fleet. *See supra* II.B.2.a–c. The changes required by the Agreement thus provide greater access to Settlement Class members. Upon implementation, the relief will be available to all Settlement Class members and no processing of Class member claims will be required. Therefore, the Agreement provides substantial relief and reflects an outstanding result for the Settlement Class, and this factor weighs in favor of approval.

**a. The Potential Costs, Risks, and Delays Associated With Trial and Appeal Weigh in Favor of Approval.**

In considering "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate, among other factors, "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Hanlon*, 150 F.3d at 1026. In deciding whether to resolve this matter in

exchange for the consideration provided in the Agreement, Plaintiffs considered the potential outcomes if the case did not settle, for instance, that Defendants could prevail in the litigation and the case would end with no benefits to the Class or that Defendants could appeal any holding in Plaintiffs' favor all the way to the Supreme Court, resulting in multi-year delays and significant outlay of resources, that could potentially result in defeat. Mills Decl. ¶ 21; Ho. Decl. ¶ 20; Weaver Prelim. Approval Decl. ¶¶ 56–57. If the case had proceeded, the Parties would have litigated the primary disputed issue in this case of whether Hertz is required to disable knee bolster airbags in rental vehicles where necessary to install hand controls. Not only would this have been a contested legal issue of first impression, requiring a fact-intensive analysis and dueling expert reports on this and other issues; there was also no guarantee that Plaintiffs would prevail. Moreover, any litigated result would require the expenditure of considerable time and resources on six scheduled depositions of class certification declarants, a contested motion for class certification, rebuttal expert reports, expert depositions, dueling Daubert and summary judgment motion practice, trial, and the likely appeal of any district court decisions. Weaver Prelim. Approval Decl. ¶ 56. Based on these factors, Plaintiffs made a considered decision that the consideration provided in the Agreement is in the Settlement Class's best interests and deserves judicial approval. *Id.* ¶¶ 58–59; Mills Decl. ¶¶ 20-21; Ho. Decl. ¶ 20. Accordingly, this factor weighs in favor of final approval.

**b. The Proposed Attorneys' Fee Award Also Weighs in Favor of Approval.**

The ADA allows prevailing plaintiffs to recover their reasonable fees and costs. 42 U.S.C. § 12205. In the context of a class settlement, "courts have an independent obligation to ensure that" any award of fees and costs "is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941.

Subject to this Court's approval, Defendants have agreed to pay Plaintiffs' counsel a total of $630,000 to resolve their claim for attorneys' fees and costs incurred through the term of the Agreement. Agreement § VI. As set forth in Plaintiffs' Motion for Award of Attorneys' Fees and Costs (ECF No. 100), the amount of agreed-upon attorneys' fees and costs is reasonable and justified in light of Plaintiffs' counsel's $783,028.00 lodestar and $96,021.18 in out-of-pocket costs and expenses.

Plaintiffs' counsel's lodestar, which itself reflects a significant affirmative reduction in the exercise of billing judgment, is supported by detailed contemporaneous billing records that document proposed Class Counsel's work on behalf of the Settlement Class. Pls.' Fee Motion 9–10.

The excellent result Plaintiffs have achieved on behalf of the proposed Settlement Class weighs heavily in favor of finding that their fee award is reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, [their] attorney should recover a fully compensatory fee."). Thus, the Court should find that the terms of the Parties' proposed fee award weigh in favor of approval.

**4. The Parties' Agreement Treats all Settlement Class Members Equitably.**

The Court must next examine whether the Agreement "provides preferential treatment to any class member." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 170 (N.D. Cal. 2019) (citation modified). Here, all Settlement Class members will benefit equally from Defendants' revised Hand Control policies and procedures and have equal opportunity to avail themselves of the expanded access to minivans, the continued provision of Hand Controls in at least five other vehicle models, and improved reservation and pick up experiences. *See* Prelim. Approval Order 10. Because the Agreement treats all Settlement Class members consistently and equitably, the Court should find this factor weighs in favor of final approval.

**5. Class Counsel's Experience and Recommendation Support Approval.**

Courts must also consider "the experience and views of counsel" regarding the settlement. *Hanlon,* 150 F.3d at 1026. "Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (citation modified). "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (citation modified).

Class Counsel has extensive experience litigating systemic disability access cases and brought this experience to bear in negotiating the Agreement, which Class Counsel believes is fair, adequate, and reasonable. *See* Weaver Prelim. Approval Decl. ¶¶ 23–25, 59. Accordingly, the Court can confidently approve the Agreement.

#### 6. The Reaction of Settlement Class Members to the Proposed Agreement Supports Approval.

In determining the fairness of a settlement, the Court should consider "the reaction of class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. The absence of a large number of objections to a proposed settlement raises a strong presumption that the terms of the agreement are fair. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) ("[L]ow rates of objections . . . are indicia of the approval of the class." (citation modified). The deadline for Settlement Class members to submit objections to the Agreement was July 15, 2026, and no Class members objected to the Agreement. Fisher Final Approval Decl. ¶ 5. In addition to the Plaintiffs' support for the Agreement, Class Counsel received supportive feedback from a Settlement Class member and from another Hand Control user. *Id.* ¶¶ 7–8. The lack of objections from Settlement Class members and positive feedback regarding the Agreement supports final approval of the proposed Agreement.

## V. CONCLUSION

The settlement of this litigation achieves important benefits for Plaintiffs and all members of the proposed Settlement Class and warrants final approval. For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) grant final approval of the Agreement; (ii) certify the proposed Settlement Class and appoint Plaintiffs and their counsel as representatives of the Settlement Class; (iii) retain jurisdiction during the term of the Agreement for the purpose of enforcement thereof; and (iv) enter final judgment in accordance with the Proposed Order submitted herewith.

DATED: July 29, 2026

Respectfully submitted,

DISABILITY RIGHTS ADVOCATES

By: Eliana Fisher

Eliana Fisher
*Attorney for Plaintiffs*